UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Amin, Ayman A.,                                    Case No. 0:03cv1181

                    Plaintiff,

vs.                                                **Plaintiff's Statement of the Case**

Flagstone Hospitality Mgmt. LLC, d/b/a
Hampton Inn,

                    Defendant.
_____

The primary issue in this case relates to the defendant's failure to provide Mr. Amin with a notice of continuing health insurance coverage. The secondary issue relates to Flagstone's failure to provide Mr. Amin with portions of his personnel file after being terminated. The relevant legal issues and facts are as follows.

1.      Relevant Facts

Mr. Amin served as the Assistant General Manager of one of the Flagstone's hotels. Flagstone owns a chain of approximately sixty hotels across the United States. As part of his duties Mr. Amin was responsible for the human resource functions which occurred at his hotel, and this included issues related to the health insurance and dental coverage of all qualified employees. In particular this included COBRA compliance at this hotel. Mr. Amin, as part of his regular duties, was aware of the right of every qualified employee to continuing health and dental coverage after leaving employment. Mr. Amin was one of these qualified employees because defendant provided him with full health and dental insurance coverage during his employment.

As part of his employment duties, Mr. Amin was responsible for COBRA compliance. Once

an employee was terminated, Mr. Amin would complete one of the defendant's forms (known as a Personnel Action Form or "P.A.F.") showing that the employee was terminate. He would immediately fax this form to the defendant's main office in Memphis, Tennessee, and a COBRA notice was generated by that office and sent to the former employee.

Mr. Amin was terminated on February 19, 2002.  On February 22, 2002, he sent Flagstone a written request asking for a copy of his personnel file. Flagstone did not send Mr. Amin a COBRA notice form by the deadline for compliance on March 5, 2002. On March 9, 2002, Flagstone sent him a version of his personnel file. This file was sent from the corporate office in Memphis.  This version did not contain a COBRA notice. His personal file did contain a P.A.F. which indicated that the COBRA form had not been sent at that time.[1]

Mr. Amin sought and received medical care after his termination. Mr. Amin suffered from mental stress related to the pressures he suffered during employment and related to his termination. This stress physically manifested itself in the form of a skin rash. After his termination Mr. Amin sought medical treatment and initially, two visits were paid for through the defendant's health insurance plan. Later, Mr. Amin was denied payment for these visits or any further benefits. After failing to receive a COBRA notice form by the March 3rd deadline, Mr. Amin telephoned the defendant's corporate office in Memphis on March 12, 2002. He told Ms. Rachelle Sennett (the defendant's corporate Director of Human Resources) that he did not receive a COBRA notice and that he wanted coverage. Ms. Sennett agreed to address the issue. Mr. Amin still did not receive his

---

[1] After litigation began, the defendant provided Amin's counsel with a version of Mr. Amin's personnel file which contained a variety of documents which were not previously disclosed to Mr. Amin. This "litigation" version still did not contain a copy of a COBRA notice for Mr. Amin, nor did the P.A.F. in this version indicate that such a notice had been sent. Eventually, a COBRA notice was provided during litigation.

COBRA notice nor was his health insurance restored.

Approximately five months after bringing suit against the defendant (and seventeen months after being fired), the defendant produced a COBRA notice bearing Mr. Amin's name. During attempts at settlement during March 2003 and later when the COBRA notice was produced in July 2003, Flagstone's counsel indicated that it was too late for Mr. Amin to accept health or dental coverage. Mr. Amin, at the direction of his counsel, applied for health insurance under the Minnesota Care program. Because of his previous COBRA eligibility his acceptance into the program was delayed until August 1, 2003. On the day after his acceptance to that program he began medical treatment. Initially he saw a general practitioner medical doctor who treated his rash and diagnosed its cause as related to stress. Mr. Amin was referred for counseling. Mr. Amin saw a psychologist who diagnosed and treated for depression and stress. Mr. Amin's depression and stress were much greater in the months following his termination. This treatment occurred long after his symptoms had lessened, and only occurred because he had health insurance coverage.

Indirect evidence supports Mr. Amin's version of the events. Long distance telephone records show Mr. Amin's telephone calls to Ms. Sennett's telephone number at her Memphis office. All human resources correspondence which Mr. Amin received from the corporate headquarters within the months surrounding his termination were always sent via certified mail through the U.S. postal service.  These mailings included his full and proper address.

Flagstone claims that a COBRA notice was sent to Mr. Amin on February 25, 2002. In July of 2003 they finally produced a page which was alleged to be from Flagstone's corporate mailing book. At that time they offered the document without any explanation on the document itself, or without any policy describing a mailing procedure for COBRA notices. In March of 2004, Flagstone

-3-

offered an affidavit of a person named Sandy Wilson. She explained that the mailing page document was proof that the COBRA notice was mailed. The address on the document, however, did not contain Mr. Amin's Zip code or the street designator of "North." Despite her explanation to the contrary, in May 2004 Flagstone produced corporate policy[2] indicating that COBRA notices are to be sent via certified mail. No corporate policy allows for a record of COBRA notices to be made a corporate mailing book as described by the Wilson affidavit. The version of Flagstone corporate policy related to COBRA requires that such notices are sent to the former employee via certified mail with return receipt requested. This policy also requires that a copy of the COBRA notice and proof of mailing be kept in the employee's personnel file.

During the discovery period and also after Magistrate Mayeron issued an order allowing Mr. Amin to depose witnesses, Flagstone's counsel could not produce or locate any employee named Sandy Wilson. Nor could it produce any employee who could indicate that a COBRA notice to Mr. Amin. In his attempts to procure service of process for a deposition of this witness, Amin's counsel sent a process server to Ms. Wilson's address (this address being supplied by the defendant). No one named Sandy Wilson was at that address. Defendant's counsel has not be able to locate this witness even for their own purposes.

2.      Legal Issues

  a.      COBRA Violation

The Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §1166, provides employees with the right to continuing health insurance coverage through their employer

---

[2] Flagstone violated the Magistrate's Order compelling disclosure of its written policies by only disclosing policies which were authored *after* Mr. Amin was terminated.

following a termination from employment. The employer must give written notification to the employee explaining their right to this continuing coverage and supplying them with the means to accept this coverage. The employer must provide notice of the right to elect coverage within fourteen days. At §1166(a)(4)(A). Employers are required to maintain records "sufficient to determine the benefits due or which may be due to [its] employees." 29 U.S.C. §1059. It also imposes this record-keeping requirement on plan administrators. See 29 U.S.C. §1027. In this way, both the employer and plan administrator are required to maintain records showing when the COBRA notice under section 29 U.S.C. §1166 is given to a terminated employee. *See* Stanton v. Fowler Trucking, 52 F.3d 723, 727 (8th Cir. 1995) overruled on other grounds, see Martin v. Arkansas Blue Cross & Blue Shield, 299 F3d 966 (8th Cir. 2002). The burden of proof is on the employer to affirmatively prove that COBRA notice was received by the employee. *Id.* at 729. An employer has a good faith duty to adhere to these requirements.

This good faith requirement has been universally interpreted by the Courts to mean that employers must maintain records showing that the required notice was received by the employee. In the event that notice was sent by mail, the good faith requirement is met by proof of sending notice to employee's last known address. Vanderhoof v. Life Extension Inst., 988 F.Supp. 507, 518 (D.N.J. 1997). Good faith is not met when even a slight mistake in the mailing address is made by the employer. *See* Truesdale v. Pacific Holding Co., 788 F.Supp. 77, 81 (D.D.C. 1991) [Summary judgment denied because employer failed to include the street designation of "Northeast" in the address, even though employee supplied street address without designation and employee received previous mailing from employer without the designation.]

In the instant case, Judge Tunheim denied summary judgment because Flagstone's unverified

mailing records only indicate that a piece of mail was sent to Mr. Amin's address without the street designation of "North," nor did the address include a Zip code.

A judge sits as a fact finder for COBRA violations. A jury is not available in this matter.

b.      COBRA Statutory Damages

If no COBRA notice is provided the Court may in its discretion award up to $100 per day from the date of the failure to provide timely notice. 29 U.S.C. §1132(c)(1). The purpose of the award is "to punish non-compliance" Chestnut v. Montgomery, 307 F.3d 698, 704 (8th Cir.2002), and "to provide... an incentive to timely respond to requests for documents," Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 948 (8th Cir. 1999). Although an "employer's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty," ... "neither [a defendant's] good faith nor the absence of actual injury to [the plaintiff] precludes the award of a statutory penalty." Montgomery at 703-704.

The $100.00 statutory penalty is a daily cap for damages and a Court may award a daily penalty less than $100.00. Jury Verdict Research (a private verdict research corporation) reports the maximum daily penalty was awarded in a majority of decisions made by Courts and at Administrative hearings. At the low end of the spectrum, decisions where no damages have been awarded have been upheld even in cases where the employer failed to provide notice but where the plaintiff suffered no harm. Awards for $5.00, $25.00, or $50.00 per day have also been upheld as sufficient where facts warrant these awards.

Mr. Amin was terminated on February 19, 2002. Flagstone had until March 5, 2002 to provide him with COBRA notification. Mr. Amin brought suit in February 2003, and Flagstone waived service on March 11, 2003. The parties initiated settlement discussions even before Flagstone

answered the complaint. These discussions included allowing Mr. Amin to elect health and dental coverage pursuant to COBRA. Flagstone could have, but did not allow Mr. Amin to make this election for coverage as early at March 2003. Flagstone was asked but did not provide a copy of the COBRA notice until July 2003. On August 1, 2003, Mr. Amin was accepted into the Minnesota Care insurance plan (covering health and dental). Had he been able to accept his COBRA benefits his coverage would have expired on August 31, 2003. The maximum number of days Mr. Amin would have been eligible for COBRA coverage is 544 days (March 5, 2002 to August 31, 2003). Accordingly, the maximum statutory fine which can be imposed is $54,400.00.

       c.     COBRA Attorney Fees

The award of fees in ERISA cases is discretionary. Martin v. Arkansas Blue Cross and Blue Shield, 299 F.3d 966, 971-2 (8th Cir. 2002) (en banc), cert. denied, 123 S. Ct. 967 (2003). In determining whether to award fees, courts should consider the five factors set out in Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir. 1984): (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

To date, counsel for the plaintiff has billed almost $70,000.00 in attorneys fees, $3,454.33 in out of pocket costs, and $1,347.22 for internal costs such as copies and postage. These fees, however, were accumulated for work on all of Mr. Amin's claims of which several were dismissed at summary judgment. Accordingly, a loadstar test would be used to apportion these amounts for a

potential COBRA claim recovery.

In considering an award for fees, the Court should consider Flagstone failure to provide the relevant COBRA policy which was in force during Mr. Amin's employment. Its failure to provide that policy violated this Court's Order compelling them to do so, and drove up the amount of billable hours required by plaintiff's counsel in attempting to secure the relevant documentation. The lack of that documentation prejudices the plaintiff's case and allows that defendant to present its current procedural defense (a procedure which would not be allowed under the policies actually produced by Flagstone). The Court should also consider that Flagstone owned approximately 60 hotels located across the United States and employed thousands of employees at the time of Mr. Amin's employment. It is therefore fully capable of satisfying an award of attorney's fees. More importantly, such an award would deter other corporations from denying COBRA benefits to employees, especially at this time when healthcare cost are higher than any other time in history.

3.     Minnesota Labor Law Violation - Failure to provide personnel records.

Minn. Stat. §181.960, Subd. 4., defines a "Personnel record" to include "wage or salary history; notices of commendation, warning, discipline, or termination; authorization for a deduction or withholding of pay; fringe benefit information; ... employment history with the employer, including salary and compensation history ...." *Id.* This would include any data related to COBRA notifications sent to the employee.

Minn. Stat. §181.961, Subd. 2 (c), requires an employer to supply a copy of the personnel record to any terminated employee within seven days of a written request made by the employee. Not only may an employee bring suit for the employer's failure to supply him with an accurate or incomplete copy of his file, but information which properly belongs in a personnel record may not

later be used in the course of a judicial proceeding when it was intentionally omitted by the employer. Minn. Stat. §181.963. *See*, Brustad v. Rosas, No. CX-99-1041 (Minn.App. 12/28/1999) (unreported). Pursuant to Minn. Stat. §191.965, Subd. 1(1), an employee may recover actual damages, plus costs stemming from an employer's failure to disclose documents. Brustad at 3.

Flagstone did not provide Mr. Amin's COBRA notification when it gave him a copy of his personnel file. Accordingly, Minnesota law bars the admission of a COBRA notice into evidence at trial. This notice was not produced to Mr. Amin until sixteen months after he received his personnel file. The policy behind this law is to protect employees from employers who fail to maintain proper employee records, and may prevent situation similar to that presented in this case - where the employer learns of its lack of compliance after the fact and falsely creates a records to cover its tracks. The failure to include the COBRA notice in Mr. Amin's file is a violation of Flagstone policy. It is reasonable to assume that the COBRA notice is missing from Mr. Amin's personnel file because a Flagstone employee failed to timely create that notice and that a COBRA notice was only created after the fact when this failure came to light because of Mr. Amin's lawsuit.

Mr. Amin only suffered out of pocket damages in the amount of $218.00. This was the cost of his treatments which were rejected by his health insurance carrier because Mr. Amin was unable to elect continuing coverage after his termination. He his COBRA notice been made part of her personnel file, Mr. Amin would have been able to make a timely election for continuing coverage. Mr. Amin may also recover his costs and fees from this lack of compliance.

4.      Evidentiary Issues:

At trial, Mr. Amin will bring a motion in limine to bar the admission into evidence of the COBRA documentation allegedly produced by Ms. Sandy Wilson, and barring any testimony from

this witness, should she now appear. Minn. Stat. §181.965 bars evidence at trial of any documentation which should have been produced to an employee as part of their personnel file. As discussed above, no COBRA documentation was produced when Mr. Amin requested his personnel file nor even as part of the "litigation" version of his personnel file that was produced during discovery.

At trial, Mr. Amin will bring another motion in limine pursuant to Fed.Civ.R.Pro. 37 to bar the defendant's use of, or present testimony regarding any COBRA related policies or procedures. The defendant never produced the COBRA policies it used during Mr. Amin's employment, and never provided a valid address for the plaintiff to find the only witness whom they claim sent Mr. Amin a COBRA notice - Ms. Sandy Wilson. Flagstone failed comply with discovery during the discovery period, it failed to do so after the Magistrate's Order compelling it to produce the appropriate policies, nor complied after another of the Magistrate's Order compelled it to produce Ms. Wilson for deposition. The defendant's compliance was limited to producing COBRA policies which were put into force *after* Mr. Amin's termination. These policies require COBRA notices to be sent via certified mail, and do not authorize the procedures described in the affidavit offered from Ms. Wilson.  Disclosure of only these "after the fact" policies was the justification stated by the Magistrate when she Ordered Flagstone to produce those policies which were in fact used during Mr. Amin's employment. Accordingly, the defendant violated both of the Magistrates Orders compelling it to disclose its actual policies and to produce Ms. Wilson for deposition. The defendant should not benefit from its flagrant noncompliance.

A district court has discretion under Rule 37, Fed.R.Civ.P., to impose appropriate sanctions for the failure to make discovery. See National Hockey League v. Metropolitan Hockey Club, 427

U.S. 639, 642, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976); English v. 21st Phoenix Corp., 590 F.2d 723,

728 (8th Cir. 1979). Rule 37(d) applies only where a failure to answer interrogatories amounts to a

total failure to respond. See Fox v. Studebaker-Worthington, Inc., 516 F.2d 989, 995 (8th Cir. 1975).

It authorizes district courts to "make such orders in regard to the failure as are just," by reference

including specifically the sanction provided in Rule 37(b)(2)(C) of dismissal of all or part of an

action. Rule 37(b)(2) allows for a variety of sanctions ranging from barring the use evidence to

making a default judgment for a party's failure to comply with the discovery orders of the trial court.

A prior order, however, is essential. See Schleper v. Ford Motor Co., 585 F.2d 1367, 1371 (8th Cir.

1978). On January 3, 2005, Magistrate Mayeron ordered Flagstone to produce a variety of discovery

in response to the Plaintiffs interrogatories, document requests, and requests for admission. For the

most part, Flagstone ignored the Magistrate's Order to produce documentation. Magistrate Mayeron

specifically ordered Flagstone to produce the policies that were used during Mr. Amin's

employment. Flagstone simply disobeyed the order and did not produce those policies. Flagstone had

more than one and one-half years to comply with discovery and failed to do so.  On June 22, 2005,

Magistrate Mayeron specifically ordered Flagstone to produce Ms. Wilson for deposition. In

response, Flagstone refused to produce her stating that she no longer worked for them. Then it only

provided her address as that of its closed corporate headquarters. The Plaintiff's process server found

a new company at that location. Ms. Wilson did work for that company. The Plaintiff has not had

a fair opportunity to question this witness before trial. Flagstone should not now benefit from

flouting the discovery rules and disobeying two discovery Orders from this Court.

       If these motions are granted, the defendant will not be able to defend itself by introducing

testimony that it had a procedure for complying with COBRA requirements nor that it in fact sent

Mr. Amin a COBRA notice. What is more important, the Court may use this malfeasance as grounds

to impose the maximum statutory penalty against the defendant.

Respectfully Submitted,

**SMITH & GLASER, L.L.C.**

Dated: December 20, 2005          By:      Kurt B. Glaser/s
                                           Kurt B. Glaser (#228886)

                                           250 Wymann Building
                                           331 North Second Avenue
                                           Minneapolis, Minnesota 55401-1627
                                           (612) 333-6513
                                           (612) 333-3821Fax

                                  ATTORNEYS FOR PLAINTIFF